UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JANE DOE,                        :
                                 :
        Plaintiff,               :
                                 :
V.                               :     CASE No. 3:11-CV-1418(RBC)
                                 :
MADISON BD. OF EDU.,             :
                                 :
        Defendant.               :

                        RULING AND ORDER

        Jane Doe brings this action by and on behalf of her minor
daughter, Mary Doe, against the Madison Board of Education
alleging that the Board violated Title IX of the Educational
Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681, by failing to
adequately protect Mary from harassment after she was sexually
assaulted by other students at a New Year's Eve party.  The
complaint arises from harassment that occurred at Polson Middle
School (Polson) in the weeks after the assault and at Daniel Hand
High School (DHSS) the following academic year.  The Board has
moved for summary judgment contending that the evidence does not
support a finding of a violation of Title IX.  For reasons that
follow, the motion is granted as to the harassment at Polson but
denied as to the harassment at DHSS.

I. Background

        The evidence in the record, viewed most favorably to the
plaintiff, shows the following.  During the 2009-2010 academic
year, Mary Doe was a student in the eighth grade at Polson.  On
December 31, 2009, she attended a party at a private residence.
Five male students from Polson sexually assaulted her while she
was forcibly held down.[1]  Photographs of the assault were taken
by at least one Polson student.  Other Polson students witnessed

---

[1]  The five male students touched the plaintiff's vagina and
several of them placed their mouths on her vagina.

the assault.

Mary returned to Polson on January 4, 2010, when classes resumed after the holiday recess.  Between January 4 and 7, while attending school, she was taunted and ridiculed by her assailants and their friends.  This behavior occurred during lunchtime and class periods and disrupted the usual atmosphere of the school. Mary also received harassing phone calls and texts, some during school hours, including messages from her assailants.  On January 7, her friend, S.J., informed faculty and guidance personnel that a serious incident had occurred on New Year's Eve and that Mary needed to speak with them.

On January 11, Mary met with a guidance counselor at Polson, Charlene Done, and told her about the sexual assault.  Before January 11, Mary had not spoken with any faculty member or school administrator about the assault.  Ms. Done informed Frank Henderson, Polson's principal.  Jane Doe, Mary's mother, was called to Polson, where she met with Mary, Ms. Done and Mr. Henderson.  Jane Doe informed Mr. Henderson that photographs were taken of Mary during the assault, one or more Polson students had these photographs on their phones, and the photographs were being shown during school hours.  She provided Mr. Henderson with the name of a student who had taken the photographs and the names of students who had seen them.  She also described the content of some of the photographs, specifically that there were photographs of Mary partially naked with T.W. - a Polson student - showing his hand on her naked buttocks.  Jane Doe further reported that Mary had been subject to taunting, teasing and other harassment in school.

Mr. Henderson told Jane Doe that he would begin calling students into his office and interviewing them about whether any pictures were circulating during school hours.  He said he would do all he could to punish the assailants and urged Jane Doe to

report the assault to the police.  The Does reported the assault
to the Madison Police Department later that day.

     That same day, Mr. Henderson met with E.O., a Polson
student.  E.O. admitted having inappropriate photographs of Mary
Doe on his cell phone and showing them during school hours.  The
next day, E.O. was suspended.  Mr. Henderson informed the Does of
E.O.'s suspension.  He told the Does he wanted to do more but had
been directed by the Superintendent of Polson, David Klein, to
refrain from taking further action until the police completed
their investigation.  Mary Doe did not return to Polson after
January 11, 2010, because she felt fearful around her assailants,
all of whom remained in school while the criminal investigation
was pending.

     On January 14, 2010, Jane Doe met with Mr. Henderson.  She
showed him voicemails and text messages that Mary continued to
receive from her assailants, including during school hours.  Mr.
Henderson told Jane Doe that he would help the Does any way he
could.  Jill Hale, Assistant Principal of Polson, met with Jane
Doe and expressed similar sentiments.  The Does also met with Dr.
Klein several times that week.  They showed him voicemails and
text messages from boys involved in the assault and pleaded with
him to remove the boys from school or isolate them so Mary could
return to classes.[2]  Dr. Klein informed the Does that he could
not conduct an independent investigation and had to wait until
the police finished their investigation before taking any further
action.  The school offered to tutor Mary Doe alone outside of
school for a few hours each day.

     On January 19, 2010, David Mantell, a licensed clinical

_____

     [2] Plaintiff states that the messages from the assailants
were self-incriminating and provided evidence that Mary had been
assaulted.  Pl.'s Chronology of Events, Def.'s Mot. for Summ. J.,
Ex. C (ECF No. 42-5) at *4.

psychologist, wrote a letter to Dr. Klein recommending that Mary Doe not return to Polson while her assailants were still in attendance.[3]  The letter was written in an attempt to persuade Dr. Klein to remove the assailants so Mary could attend Polson free from harassment and fear.  On January 20, the Madison Police Chief "essentially confirmed" that arrest warrants would be issued for five assailants.  But the assailants were not removed at that time.

On February 11, 2010, four Polson students were arrested and detained as a result of the Does' complaint concerning the New Year's Eve assault.  In late February, Jane Doe was informed that the assailants had withdrawn from school.

In March 2010, Mary Doe returned to Polson to take the Connecticut Master Tests.  Jane Doe and Mr. Henderson created a flexible schedule to help Mary acclimate to school after her long absence.  Mary's return to school made her extremely uncomfortable.  A bathroom wall displayed the handwritten message, "Mary Doe is a slut."[4]  And Mary was subjected to harassment by other students, including some she considered friends.[5]  Students called her names; spoke in her presence about

---

[3] The letter states, in relevant part: "As a result of my findings, I have recommended to the family that [Mary] not return to The Madison Public Schools so long as the youths who assaulted [Mary] are still attending your school system."  Def.'s Mot. for Summ. J., Ex. E (ECF No. 42-7) at *2.

[4] Assistant Principal Hale instructed a janitor to remove the writing; it was removed after three days.  Def.'s Rule 56(a)(1) Statement ¶ 20; Pl.'s Rule 56(a)(2) Statement ¶ 20; Pl.'s Rule 56(a)(2) Counter-Statement ¶ 23.

[5] Plaintiff explains that during the time Mary was out of school, while her assailants were permitted to remain at Polson, her assailants "aligned" her friends into their "camp" by telling untrue versions of what happened during the assault.  Pl.'s Rule 56(a)(2) Counter-Statement ¶ 22.

the assailants, four of whom remained incarcerated as a result of
her complaint; argued with her; and talked behind her back.  In
addition, E.O. and others who had been present during the assault
remained in school.  Around this time, some of Mary's friends
also had confrontations with male students at the school; one of
her friends had back-and-forth exchanges with two students, J.E.
and T.W.  Mary knew she could go to Ms. Doane for support but did
not do so because she felt it would make things worse.

On March 24, 2010, a meeting was held to discuss Mary's
status and educational options.  In attendance were Mary Doe, her
parents, the Does' legal counsel, Dr. Klein, Mr. Henderson, and
Cindy Twiss, Director of Special Education and Student Services
for the Madison Public Schools.  The consensus at the meeting was
that Mary should go to public school in Guilford.  Pl.'s
Chronology of Events, Def.'s Mot. for Summ. J., Ex. C (ECF No.
42-5) at *7.  The Does arranged for Mary to enroll in Guilford
for the remainder of the academic year.  Between April and June
2010, Mary attended school in Guilford.

Mary originally planned to attend high school in Guilford in
the fall of 2010.  One of the assailants, J.E., and the student
who had been suspended for the photographs on his cell phone,
E.O., would be attending DHHS, along with other boys who had been
present at the assault.  In the first week of September 2010, Dr.
Klein informed Jane Doe that he could not punish or remove any of
the students involved in the assault or subsequent harassment
without further "new" incidents that the school judged as
amounting to a serious disruption interfering with Mary's or
others' learning environment.

During the first week of September, Jane Doe informed Dr.
Klein of physical altercations, teasing, taunting and verbal
harassment involving her other children in the Madison Public
School system, which disrupted their learning environments.  In

addition, she informed Barbara Britton, Principal of DHHS, about an incident at DHHS in which J.E. and E.O. reportedly referred to Mary as a "slutbag" in front of other students in the cafeteria, one of whom immediately called Mary to inform her about the incident.  Ms. Britton interviewed J.E. and other students concerning the incident in the cafeteria and informed Jane Doe there was no evidence to support disciplinary action.  Jane Doe disputes the lack of evidence.  Pl.'s Rule 56(a)(2) Statement ¶ 30.[6]  That same day, Jane Doe informed Ms. Britton that Mary wanted to return to DHHS but that the presence of J.E. and E.O. made her uncomfortable and scared.  Def.'s Rule 56(a)(1) Statement ¶ 28; Pl.'s Rule 56(a)(2) Statement ¶ 28.

On September 9, 2010, four students, including J.E., were sentenced in relation to the New Year's Eve assault.  All the students, including J.E., were ordered to have no contact with Mary Doe.  Mary re-enrolled in Madison Public Schools the next day and started attending DHHS several days later.

Upon her return to DHHS, Mary saw J.E. in the halls numerous times each day.  J.E. repeatedly stared her down, laughed at her, and made her feel harassed, threatened and upset.  She was also uncomfortable around E.O., with whom she shared a chorus class and lunch period.  At a high school football game on September 24, 2010, E.O. told other students that Mary Doe "sent our friends to juvie" and they should never talk to her again.  Jane Doe reported this incident to the school but was informed that E.O.'s alleged behavior did not cause enough of a disruption to

_____

[6] Specifically, Jane Doe asserts that by September 8, Ms. Britton was able to determine that J.E. and E.O. were responsible for the derogatory comment, but did nothing to punish them. Pl.'s Rule 56(a)(2) Counter-Statement ¶ 33.  Instead, Jane Doe states that she was informed that "the behavior reported did not cause enough of a disruption to anyone's learning environment to support and/or warrant any additional investigation or disciplinary action."  Id.

anyone's learning environment to warrant disciplinary action.

Between September 14 and 27, 2010, Jane Doe reported at least three different incidents to Mr. Klein and Ms. Britton involving J.E. or his associates.  She complained that Mary was feeling harassed, slandered, mocked or threatened by her assailants and their friends.  At about this time, Mary Doe submitted a paper to her English teacher explaining how traumatic it was for her to encounter J.E. and E.O. at DHHS.  At least three other families told Jane Doe that they also had complained to the school about disruptions to their children's learning environments as a result of statements and conduct by J.E. and E.O.

On September 27, 2010, Jane and Mary Doe submitted letters to Dr. Klein complaining about the learning disruptions Mary was experiencing as a result of J.E.'s and E.O.'s harassment.  The next day, Mary Doe met with Ms. Britton and Cynthia Schneider, Assistant Principal of DHHS, to discuss the letters.  Mary described the incidents at the football game and in the cafeteria, and explained that she felt J.E. had been mocking and slandering her.  On September 30, Ms. Britton wrote a letter to Mr. Klein stating that J.E.'s presence was a disturbance to Mary's educational environment and recommending that the Board consider expulsion.  J.E. was suspended that day.  He did not return to school and Mary did not see him again.  No one from the school informed the Does that J.E. had left, why he left, or whether it would be permanent.

E.O. remained in school.  Mary spent the remainder of the year sharing class and lunch period with him and at least two other boys who were present during the assault and rumored to be involved.  Jane Doe sent numerous letters to Mr. Klein, Ms. Britton and members of the Board of Education concerning Mary's difficulties attending school with E.O.  Mary heard persistent

rumors that some or all of her assailants might return to DHHS, which the school refused to confirm or deny.  Ultimately, she withdrew from DHHS and enrolled in private school, which she has attended since the fall of 2011.[7]

## II. Legal Standard

Summary judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  In seeking summary judgment, a defendant has the initial burden of showing that there is an absence of evidence to support an essential element of the plaintiff's claim.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  To overcome this showing, a plaintiff must point to evidence that would permit a jury to return a verdict in her favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  In determining whether summary judgment is proper, the record must be viewed in the light most favorable to the plaintiff.  See Sheppard v. Beerman, 317 F.3d 351, 354 (2d Cir. 2003).  This requires the court to resolve all ambiguities and draw all permissible inferences in favor of the plaintiff, see Stern v. Trustees of Columbia University, 131 F.3d 305, 312 (2d Cir. 1997), although conclusory allegations, conjecture, and speculation are insufficient to create a genuine issue of fact for trial.  Shannon v. N.Y.C. Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003).  If the evidence viewed most favorably to the plaintiff would permit a jury to find in her favor, summary judgment must be denied.

## III.  Discussion

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under

---

[7]

any education program or activity receiving Federal financial
assistance."  20 U.S.C. § 1681(a).  Under <u>Davis v. Monroe County
Bd. of Educ.</u>, 526 U.S. 629 (1999), a school board may be liable
under Title IX for student-on-student harassment if a three-part
test is met.  First, the sexual harassment must be "so severe,
pervasive, and objectively offensive that it effectively bars the
victim's access to an educational opportunity or benefit."  <u>Id.</u>
at 633.  Second, the board must have had actual knowledge of the
harassment.  <u>Id.</u> at 650.  Finally, the board's response to the
harassment must reflect deliberate indifference.  <u>Id.</u> at 643.
"Deliberate indifference may be found both when the defendant's
response to known discrimination is clearly unreasonable in light
of the known circumstances, and when remedial action only follows
after a lengthy and unjustified delay."  <u>Hayut v. State Univ. Of
NY</u>, 352 F.3d 733, 751 (2d Cir. 2003).  Moreover, the deliberate
indifference "must, at a minimum, cause students to undergo
harassment or make them liable or vulnerable to it."  <u>Davis</u>, 526
U.S. at 644-45.

Courts in this district have held that a reasonable jury
could find that the mere possibility of an encounter with an
assailant at school constitutes pervasive, severe and objectively
offensive harassment.  <u>See, e.g.</u>, <u>Doe v. Coventry Bd. of Educ.</u>,
630 F. Supp. 2d 226, 233 (D. Conn. 2009) ("The mere fact that
Mary Doe and [the assailant] attended school together could be
found to constitute pervasive, severe and objectively offensive
harassment so as to deny Mary Doe equal access to school
resources and opportunities."); <u>Doe v. Derby Bd. Of Educ.</u>, 451 F.
Supp. 2d 438, 444 (D. Conn. 2006) ("Sally Doe was constantly
exposed to a potential encounter with her assailant . . . . [and]
the experience of seeing him 'was very upsetting' and made the
'school year very hard.'  Thus, even absent actual post-assault
harassment by [the assailant], the fact that he and plaintiff

9

attended school together could be found to constitute pervasive, severe, and objectively offensive harassment."); Kelly v. Yale Univ., No. 3:01-CV-1591(JCH), 2003 WL 1563424, at *3 (D. Conn. Mar. 26, 2003) ("[F]ollowing the assault, [assailant's] presence on campus was harassing because it exposed her to the possibility of an encounter with him.  The court agrees that a reasonable jury could conclude that further encounters, of any sort, between a rape victim and her attacker could create an environment sufficiently hostile to deprive the victim of access to educational opportunities . . . .").  Such a finding may be bolstered by evidence of "proxy harassment," including name calling and rumors, by an assailant's friends.  E.g., Doe v. Hamden Bd. of Educ., No. 3:06-CV-1680(PCD), 2008 WL 2113345, at *5 (D. Conn. May 19, 2008) (intimidation and verbal assaults, including indirect harassment such as name calling and spreading of rumors by assailant's friends, could be found to create a hostile environment that interfered with victim's educational opportunities); Doe v. Derby Bd. Of Educ., 451 F. Supp. 2d 438, 444-45 (D. Conn. 2006) (evidence of proxy harassment, including claims that assailant's friends harassed plaintiff's minor, "bolster[ed] plaintiff's claim concerning the severity and offensiveness of having to go to school in the same building as [assailant]").

A. Alleged Title IX Violations at Polson between January and March 2010

The post-assault harassment that occurred at Polson in early January 2010 may have been sufficiently severe, pervasive and offensive to pass the first part of the Davis test.  The Board cannot be held liable for deliberate indifference to this harassment, however, unless it had actual notice of the sexual assault.  See Doe v. Hamden Bd. of Educ., 2008 WL 2113345, at *6 ("The board may be liable for deliberate indifference to post-

10

assault harassment once it became aware of the sexual assault and the related student harassment."). Although "the actual notice standard does not set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student," Tesoriero v. Syosset Cent. Sch. Dist., 382 F. Supp. 2d 387, 397 (E.D.N.Y. 2005), the evidence in the record is insufficient to raise a genuine issue as to whether any school official knew of the assault before Mary reported it on January 11. Jane Doe has submitted an affidavit stating that teachers or administrators may have learned about the assault based on the conduct of Mary and her classmates during school hours, Aff. of Jane Doe, Pl.'s Opp'n to Summ. J., Ex. A (ECF No. 43-3), ¶ 13, and Mary Doe has submitted an interrogatory response stating that "[t]eachers may have been aware that something was going on as soon as 1/4/10." Pl.'s Resp. to Interrog., Pl.'s Opp'n to Summ. J., Ex. B (ECF No. 43-5) at *5. But there is no evidence, direct or circumstantial, permitting a reasonable finding that any teacher or administrator knew about the assault prior to January 11. The evidence that a fellow student informed the guidance counselor on January 7 that something "serious" had happened to Mary Doe is not sufficient to charge the school with actual knowledge of the sexual assault. Nor has plaintiff demonstrated that the school violated Title IX by failing to undertake an investigation based on this report or on the atmosphere that existed at the school between January 4 and January 11.

As to the harassment that Mary experienced after January 11, her Title IX claim fails because a jury could not find that the school acted "clearly unreasonably" as required by the third part of the Davis test. The evidence establishes that Mary was not going to return to school unless her assailants were removed. Plaintiff urges that the Board was required to remove the

assailants from school pending an investigation.  But the Board was not required to suspend them to avoid liability under Title IX.  See Davis, 526 U.S. at 648; Kelly, 2003 WL 1563424, at *4.

With regard to the harassment that occurred when Mary attempted to return to Polson in March 2010, after her assailants had voluntarily withdrawn, the Title IX claim fails because the harassment that Mary experienced was no longer sufficiently severe, pervasive or offensive to be actionable.  The harassment Mary experienced - including the insult written on the bathroom wall, isolation from friends and name calling - was objectively less serious than harassment held to be legally insufficient in other cases.  See, e.g., Brodsky, 2009 WL 230708 at *6 (numerous instances of rude and unkind treatment by peers not sufficiently severe, pervasive and offensive to deprive victim of access to educational opportunities or benefits provided by school).[8] Moreover, the school did not demonstrate deliberate indifference. Mary returned to school under a plan coordinated by her mother and the principal; apparently, neither anticipated that she would encounter harassment that made her uncomfortable.  The record is devoid of evidence that school officials or the Does received reports of insulting comments, rumors or similar behavior targeted at Mary or her friends after the assailants voluntarily withdrew.  Mary attended Polson for only three days for the CMTs; because of her discomfort, she did not return.  Pl.'s Rule

---

[8]  Plaintiff notes that upon her return to Polson, Mary was exposed to possible encounters with E.O. and others who had been present at and possibly participated in the assault.  Unlike her return to DHHS a few months later, however, there is no evidence that Mary actually encountered E.O. at Polson.  Although the mere possibility of an encounter with an assailant can be sufficient under the first part of the Davis test, the mere possibility of an encounter with persons present at a sexual assault, even one who stood by and took pictures, is distinguishable.

56(a)(2) Counter-Statement ¶ 22.[9]  Other than a report about the graffiti in the bathroom, the record does not reflect any complaints that Mary made about harassment at that time; in fact, she admits that she did not talk to the guidance counselor about her concerns.  On this record, a jury could not reasonably find that the defendant acted clearly unreasonably.

    B. DHHS during the 2010-2011 Academic Year

    In seeking summary judgment with regard to the harassment Mary experienced at DHHS in the fall of 2010, the defendant argues with some force that the school acted appropriately in all respects, including promptly investigating specific allegations of harassment and removing J.E. immediately after the Does submitted their formal complaints.  Viewing the evidence in a manner most favorable to the plaintiff, however, I conclude that a jury could reasonably find in her favor.

    With regard to the first part of the Davis test, a jury could find that Mary's encounters with J.E. and E.O. at DHHS, the possibility of more such encounters, and proxy harassment combined to create harassment that was sufficiently pervasive, severe and offensive as to interfere with Mary's educational opportunities.  The second part of the test is satisfied because the school's knowledge of the sexual assault makes it chargeable with knowledge of subsequent harassment and in any event a jury could find that the school had actual notice of harassment.  Finally, with regard to the third part of the test, a jury could find that the defendant's actions demonstrated deliberate indifference.  See Kelly, 2003 WL 1563424, at *4 ("After Yale

---

    [9] Plaintiff's Chronology of Events reports: "Victim decides it is too emotionally upsetting to remain in MPS.  Mr. Henderson and Mrs. Hale appear understanding and supportive and disappointed that they will be losing victim as a student."  (ECF No. 42-5) at *6-7.

received notice of the harassing conduct, it had a duty under Title IX to take some action to prevent the further harassment of Kelly.").  The record is not entirely clear as to what accommodations, if any, the school made following Mary's enrollment at DHHS.[10]   However, the school does not appear to have taken steps to minimize contact between Mary and J.E. or E.O., and a jury could find that failure to do so was clearly unreasonable.  E.g., Doe v. Coventry Bd. Of Educ., 630 F. Supp. 2d at 235 (jury could find that school violated Title IX by failing to take action to ensure assailant was in different classes); Doe v. Derby Bd. of Educ., 451 F. Supp. 2d at 447 (jury might reasonably find that brief suspension of assailant after which he was allowed to remain in school, exposing victim to potential for emotional encounters and harassment, constituted deliberate indifference especially when defendant "made no other efforts to reduce Sally Doe's vulnerability to traumatic interactions with her attacker or otherwise reach out to her to offer protection"); compare Brodsky ex rel. S.B. v. Trumbull Bd. of Educ., No. 3:06cv1947 (PCD), 2009 WL 230708, at *8 (D. Conn. Jan. 30, 2009) (no deliberate indifference as to student-on-student harassment when defendants warned students about their behavior, issued punishments such as detentions and writing assignments on bullying, spoke with parents about students' behavior, met with teachers to inform them about the situation, separated the children or attempted to increase supervision, provided counseling to victim, communicated regularly with parents of victim, and conducted independent investigation into bullying allegations).

        Mary Doe admitted in her deposition that she told guidance

---

[10] It appears that Mary had a guidance counselor available to her, although Mary asserts that she did not feel comfortable talking to the counselor and was not always honest with her.

counselor Mary Jane Welch in the fall 2010 that "nothing [new] had happened" with regard to E.O. and J.E.  Dep. of Mary Doe (ECF No. 42-3) at *96.  Mary further testified at her deposition that she "probably" told Welch that she had no issues in school and that she ignored E.O.  Id. at *99.  The defendant understandably places great emphasis on this testimony.  Even if school officials reasonably assumed that Mary had no issues until it received the complaint letters in late September, however, this would not explain their inaction as to E.O. after that date, which itself could provide a basis for liability under Davis.

IV. Conclusion

Accordingly, the motion for summary judgment is hereby granted in part and denied in part.  The motion is granted as to the claim that the defendant violated Title IX in the winter and spring of 2010 in connection with harassment at Polson Middle School.  The motion is denied as to the claim that the defendant violated Title IX during the 2010-2011 academic year when Mary Doe was a student at DHHS.

So ordered this 25th day of November 2014.

                                                                              /s/RNC
                                                     Robert N. Chatigny
                                     United Stated District Judge

15